699 So.2d 1014 (1997)
Betty RASKIN and Irving Raskin, Appellants,
v.
COMMUNITY BLOOD CENTERS OF SOUTH FLORIDA, INC., Appellee.
Nos. 96-1233, 96-2771.
District Court of Appeal of Florida, Fourth District.
May 7, 1997.
Order Denying Rehearing October 1, 1997.
*1015 Adolfo Del Castillo of Adolfo Del Castillo, P.A., Miami, for appellants.
David F. Cooney and Pamela R. Kittrell of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a final judgment following entry of summary judgment for appellee. We reverse and remand for trial.
Appellant, Betty Raskin, was hospitalized at Boca Raton Community Hospital in December of 1991. While at the hospital, she was transfused with five units of whole blood supplied by appellee, Community Blood Centers of South Florida, Inc. In April of 1992, appellant was re-admitted to the hospital, where it was determined she had contracted viral Hepatitis B. The treating doctors made entries in the hospital records indicating the transfused blood was the source of the virus. Appellant sued appellee as well as the hospital.
Originally, appellants alleged negligence and breach of implied warranty under section 672.316(5), Florida Statutes (1989); however, appellants dropped the allegation of negligence. The hospital's motion for summary judgment was denied.
At the hearing on the blood bank's motion for summary judgment, the trial court was required to interpret the above statute on the sole remaining issue of implied warranty, not negligence. See Sicuranza v. Northwest Florida Blood Center, Inc., 582 So.2d 54 (Fla. 1st DCA 1991). The statute provided:
(5) The procurement, processing, storage, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body for any purpose whatsoever is declared to be the rendering of a service by any person participating therein and does not constitute a sale, whether or not any consideration is given therefor; and the implied warranties of merchantability and fitness for a particular purpose are not applicable as to a defect that cannot be detected or removed by a reasonable use of scientific procedures or techniques.
§ 672.316(5), Fla. Stat. (1989).
It was appellants' position, which we adopt as being correct, that their obligation was to show the defect could "be detected or removed by a reasonable use of scientific procedures or techniques." The record plainly shows this to be an issue of fact. Appellants had introduced evidence supporting causation; and appellee does not argue the summary judgment was appropriate based on a lack of causation.
We reject appellee's position, accepted by the trial court, that it was necessary for appellants to show appellee was negligent in its testing. To us, the hybrid statute is clear on that issue.
The Florida Supreme Court has held that the law of this state prior to the enactment of section 672.316(5) was that blood suppliers were strictly liable for defects in blood, under breach of implied warranties, even when the defect was undetectable. Rostocki v. Southwest Florida Blood Bank, Inc., 276 So.2d 475 (Fla.1973). Section 672.316(5) was clearly an effort by the legislature to limit implied warranty actions against blood suppliers. The Florida Supreme Court has held that statutes in derogation of the common law:
[W]ill not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute was not intended to make any alteration other than was specified and plainly pronounced. A statute, therefore, designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard. 30 Fla. Jur. Statute, Sec. 130.
Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977).
The only limitation on implied warranty cause of actions specified and plainly pronounced in section 672.316(5) is that they "are not applicable as to a defect that cannot be detected or removed by a reasonable use *1016 of scientific procedures or techniques."[1] The statute does not specify or state that the plaintiff must allege and prove negligence of the blood supplier in performing the scientific procedures or techniques. Such requirement in the statute would not make sense because the plaintiff in an implied warranty action would have the same burden as the plaintiff in a negligence action.
Interpreting the statute to require that a plaintiff must prove the defect alleged is detectable or removable by a reasonable use of scientific procedures affords blood suppliers protection from strict liability for contaminants it cannot detect or remove, while maintaining liability for defects that can be detected or removed.
We agree with the actual holding in Williamson v. Memorial Hospital of Bay County, 307 So.2d 199 (Fla. 1st DCA 1975):
Accordingly, we hold that the application of Section 672.316(5), Florida Statutes, provides that a plaintiff may maintain an action for damages on the ground of breach of implied warranty of fitness or merchantability only if he alleges and proves that the defect of which he complains is detectable or removable by the use of reasonable scientific procedures or techniques.
Id. at 201. Thus, the holding of Williamson does not state that a plaintiff must prove the supplier failed to exercise reasonable care in order to recover. To the extent that it could be arguably interpreted the following language in Williamson required appellants to prove negligence on appellee's part, we disagree with same:
When viewed from another perspective, it can be said that the statute now engrafts into the law as it relates to the negligent rendition of a given specie of service a concept heretofore cognizable in the field of sales, to wit, breach of implied warranty of fitness and merchantability if the breach is accompanied by the failure to exercise reasonable care in detecting or removing a defect in the blood by the use of reasonable scientific procedures or techniques.
Id. at 201.
On remand the trial court is directed to permit appellants to amend their cause of action for implied warranty solely to the extent consistent with this opinion.[2]See Brumer v. HCA Health Servs. of Florida, Inc., 662 So.2d 1385 (Fla. 4th DCA 1995).
Finally, our decision vitiates the judgment entered in favor of appellee for attorney's fees and costs based on appellants' failure to accept an offer of judgment.
KLEIN, J., and OFTEDAL, RICHARD L., Associate Judge, concur.

ON MOTION FOR REHEARING
PER CURIAM.
In its above motion, appelleefor the first timehas called to the court's attention the supreme court's decision in Silva v. Southwest Florida Blood Bank, 601 So.2d 1184 (Fla. 1992). In Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1983), this court said:
It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, *1017 and the legal arguments supporting the positions of the respective parties. See Re: Estate of Barret, 137 So.2d 587 (Fla. 1st DCA 1962) and Clonts v. Spurway, 104 Fla. 340, 139 So. 896 (1932). When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy. Again, it is not the function of the Court to rebrief an appeal. We basically work within the framework of the briefs although, admittedly, there are instances where errors are so glaring or fundamental that a court will adjudicate them on its own initiative in its original opinion.
Polyglycoat, 442 So.2d at 960.
Having thus expressed our disappointment in the belatedness of appellee's counsel, we have now examined dicta in Silva and conclude that it does not occasion our altering the decision we made. The Middle District of Florida has stated:
The narrow issue presented to the Supreme Court of Florida in Silva was whether blood banks were subject to the two-year medical malpractice statute of limitations or the four-year negligence statute of limitation.... Silva cannot be read as ruling on any issues relating in any way to either pharmaceutical manufacturers or products liability actions.
Walls v. Armour Pharmaceutical Co., 832 F.Supp. 1467, 1472 (M.D. Fla.1993), aff'd, 53 F.3d 1184 (11th Cir.1995) (emphasis added). Accordingly, the motion is denied.
GLICKSTEIN and KLEIN, JJ., and OFTEDAL, RICHARD L., Associate Judge, concur.
NOTES
[1] We recognize the legislature also classified the distribution of blood as a service rather than a sale, seeming to completely insulate blood suppliers from any implied warranty actions under sections 672.314 and 672.315. However, such an interpretation would render the language limiting implied warranty actions superfluous.
[2] Appellants' complaint at the time of the summary judgment hearing alleged the transfused blood was contaminated with Hepatitis B virus which "should" have been detected rather than alleging the virus "could" have been detected. Therefore, at the time the trial court entered summary judgment, the implied warranty action was not properly plead. See Williamson infra (stating plaintiff may maintain implied warranty action only if he alleges and proves the defect was detectable or removable). Appellants twice sought, after the order granting summary judgment, leave to amend to reallege negligence. It was not until after entry of final judgment that appellants sought to amend the language in the implied warranty count to clearly state the defect could have been detected. In spite of this omission, we find the trial court should permit such amendment.